IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANGELA LEWIS O/B/O JIM CARTER, III,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner<br>of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 2:03cv1083-SRW<br>WO |

**MEMORANDUM OF OPINION**

Angela Lewis o/b/o Jim Carter, III,[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On August 20, 2001, plaintiff filed an application for Supplemental Security Income (SSI). On March 5, 2003, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on April 11, 2003, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. On September 3, 2003, the Appeals Council

---

[1] Carter will be referred to as the "plaintiff" in this memorandum of opinion.

denied plaintiff's request for review[2] and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff alleges disability since June 26, 2001 (his birth date) based on Erb's palsy, a form of muscle paralysis, in his right arm. He was approximately 21 months old on the

---

[2] The Appeals Council considered additional evidence in reaching its decision. R. 6-9; 176-181.

date on which the administrative decision was issued (April 11, 2003).  R. 14.

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits. 20 C.F.R. §§ 416.924(a), (b).  In this case, the ALJ determined that plaintiff has never worked.  R. 21. The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Shinn, 391 F.3d at 1278 (citing 42 U.S.C. §§ 416.924(a), (c)).  The ALJ found that plaintiff had the severe impairments of "right Brachial palsy/Erb's palsy, traumatic psuedomeningoceles, and a mild expressive language delay."  R. 21.

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).) This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.).  As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ]

3

>    marked and severe functional limitations.").
>      A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79.  In this case, the ALJ determined that plaintiff did not have any impairment or combination of impairments that met or medically equaled a Listing.  R. 22.

Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equivalent" to those in the Listings. "In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

 (i) Acquiring and using information;

 (ii) Attending and completing tasks;

 (iii) Interacting and relating with others;

 (iv) Moving about and manipulating objects;

 (v) Caring for [one]self; and

 (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level

severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).

" A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). A marked limitation is the equivalent of the functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean; however, if the claimant has not attained age 3, he or she will be found to have a marked limitation if functioning at a level that is more than one-half but not more than two-thirds of chronological age when there are no standard scores from standardized tests in the case record. 20 C.F.R. § 416.926a(2)(I). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Henry,156 Fed.Appx. at 174 (citing 20 C.F.R. § 416.926a(e)(3)(I)).

In this case, the ALJ determined that plaintiff has "a weak moderate (less than marked) impairment in the acquiring and using information domain," R. 23; "no impairment in the attending and completing tasks domain," R. 25; "a mild (less than marked) impairment in the interacting and relating to others domain, R. 26; "a moderate (less than marked) impairment in the moving about and manipulating objects domain," R. 28; "a moderate (less

5

than marked) impairment in the caring for yourself domain," R. 16; and "a marked impairment in the health and physical well-being domain." R. 17. Plaintiff challenges the ALJ's decision, arguing that he erred as a matter of law in finding that plaintiff's impairments do not result in marked functional limitations in two or more areas of functioning. Specifically, plaintiff contends that he has marked limitations in both the areas of interacting and relating to others, and of moving about and manipulating objects.

1.     Interacting and Relating to Others

In his decision, the ALJ reviewed the standards applicable to this domain, and discussed plaintiff's abilities and limitations as follows:

> The claimant's mother testified that, as a newborn and young infant, the claimant could form and maintain intimate relationships, and he was affectionate with her.  He respond[ed] to h[is] mother visually and vocally through mutual looking at each other and vocal exchanges.  He respond[ed] physically to you such as molding his body to yours while being held.  He could not play pat-a-cake as he could not use his right hand.  He could somewhat play peek-a-boo. He could make gestures.  He could make sounds or vocalizations to get your attention.  He could not recognize and produce emotional cues such as facial expressions.  He could recognize and respond to vocal tone changes.  He was not able to imitate sounds using vowels and later consonants.  He was not able to on his own to make sounds using vowels and later consonants.  He was later able to make sounds using longer babbling strings.  He enjoyed being touched or stroked.  He enjoyed being held.  He enjoyed being rocked.

> The claimant's mother testified that, as an older infant and toddler, the claimant could exhibit normal dependence upon her.  He was intimate with her. He could respond to the feelings of others. He could initiate and respond to a variety of emotional cues. He could initiate and maintain interactions with others.  He did show interest in watching other children play.  He could eventually play with other children. He could communicate using intelligible words.  He will repeat a word, but he will not initiate a word.

>Upon examination, there was less than a 25% delay in social functioning (Exhibit 9F).
>
>Based upon the above, I find that the claimant has a mild (less than marked) impairment in the interacting and relating to others domain.

R. 26.

Plaintiff contends that, in deciding that his impairment in this domain was mild, the ALJ "failed to consider that the Plaintiff was found to have demonstrated communication/language skills representing greater than a 25% developmental delay. (R.171). The combination of delays in social functioning and communication/language skills result in a 'marked' impairment in the area of interacting and relating with others." Plaintiff's Brief at 4.

Plaintiff is correct that the development of language skills is an important consideration in the domain of interacting and relating to others. See 20 C.F.R. § 416.926(i) ("In this domain, we consider how well you initiate and sustain emotional connections with others, *develop and use the language of your community*, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.")(emphasis added). The ALJ did, in fact, review this area of plaintiff's development, noting that, as a newborn and young infant, plaintiff "respond[ed] to h[is] mother visually and vocally through mutual looking at each other and vocal exchanges," he "could make sounds or vocalizations to get your attention," he "could recognize and respond to vocal tone changes," he "was not able to imitate sounds using vowels and later consonants," he "was not able to on his own to make sounds using vowels and later consonants," and he "was later able to

make sounds using longer babbling strings." R. 26. The ALJ found that as an older infant and toddler, plaintiff "could communicate using intelligible words. He will repeat a word, but he will not initiate a word." Id. These observations are supported by substantial evidence.[3] R. 50-52; 58-59.

The ALJ's failure to specifically discuss the fact that a social worker from Children's Rehabilitation Services found a developmental delay greater than 25% in communication/language development on January 13, 2003 does not mean that he did not consider that finding.[4] R. 171; see Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'"). The report in question focused primarily on the skills that plaintiff actually demonstrated on the day in question, when he spoke very little. However, the report also noted that plaintiff's mother indicated that plaintiff could occasionally say "mama" or "dada" and three to four words, such as "hey," "bye," "stop," and "dot," as well as identifying one body part, although he did not do so on the day of the examination. R. 171. Further, although the social worker found a greater than 25% developmental delay in communication/language skills, she estimated those skills to be in the 13 to15.5 month age

---

[3] However, plaintiff's mother testified that he responded only visually, not vocally, to her as an infant. R. 50.

[4] The ALJ mentioned, but did not specifically discuss, this finding in his decision. R. 20.

range (plaintiff was 19 months old on the date of the examination, with a corrected age of 18 months, 1 week). This does not represent a level of functioning that is more than one-half but not more than two-thirds of chronological age, as is required for a marked impairment.

In addition, the ALJ was obliged to consider the greater than 25% deficit in plaintiff's communication/language development found by a social worker on January 13, 2003 in the context of the full record concerning plaintiff's ability to interact and relate to others. That record included a report from the same social worker that plaintiff's communication/language development and social emotional development were within normal limits on December 5, 2001, R. 164; a report from an early intervention specialist that plaintiff did not experience developmental delays of more than 25% in communication and social skills on November 30, 2001, R. 167-68; and a report from a speech/language pathologist – prepared after the January 13, 2003 report – that plaintiff presented on January 31, 2003 with receptive language skills within normal limits, and expressive language skills which – while these reflected a greater than 25% delay in total language development – were characterized as constituting only a "very mild expressive language delay." R. 173. In addition, in evaluating plaintiff's impairments in the domain of interacting and relating to others, the ALJ properly considered plaintiff's social and emotional development, an area in which plaintiff exhibited either normal functioning, or a less than 25% developmental delay, on all reports. R. 165, 168, 172. It appears from the ALJ's decision that the ALJ properly reviewed all of the evidence and evaluated plaintiff's medical condition as a whole, considering all of his impairments to the extent they were supported by the record. The ALJ did not err in

9

concluding, based on the testimony of the mother and all of the evidence presented in the reports submitted concerning plaintiff's condition, that the claimant had a mild (less than marked) impairment in the interacting and relating to others domain.

2.      Moving About and Manipulating Objects

In his decision, the ALJ also reviewed the standards applicable to this domain, and discussed plaintiff's abilities and limitations as follows:

> The claimant's mother testified that, as a newborn and young infant, the claimant could move his body, but he could only use his left hand. He could move his head and could sit with support. The claimant could not creep or crawl until he was 11 months old, and then he began walking only 1 week later. He could pull to standing position and could walk with his hand being held. He could wave a small rattle, could reach for or grasp objects with his left hand only, could pick up small objects with his left hand only, and could drop small objects into containers. The claimant could attempt to scribble.
>
> The claimant's mother testified that, as an older infant and toddler, the claimant did not have any problem with his legs, but he did have problems using his right upper extremity. He could move his body with steadily increasing dexterity. He could move his body with steadily increasing independence from support by others. He could begin to walk and run without assistance. He could begin to climb with increasing skill. He could manipulate small objects with his left hand only. He could get something that he wanted or needed if it was within his reach. He could play with small blocks. He could scribble with crayons. He could not feed himself. He could not use a fork or a spoon, but he could hold a bottle.
>
> The claimant has right brachial palsy and Erb's palsy (Exhibits 3F, 4F, 5F, & 7F). He has no gross motor delay, but he does have a fine motor delay (Exhibit 8F). His motor delay is less than 25% (Exhibit 9F).
>
> Based upon the above, I find that the claimant has moderate (less than marked) impairment in the moving about and manipulating objects domain.

R 27-28.

Plaintiff contends that the ALJ should have found a marked impairment in this domain. Specifically, he notes that "[a]n evaluation performed on December 5, 2001, by Children's Rehabilitation Service, showed a motor delay greater than 25% R. 165). A treating physician, Dr. Holly Mussell, noted an absence of right biceps movement and contractions, and no deep tendon reflexes in the right upper extremity. R. 160)." Plaintiff's Brief at 4.

The court concludes that the ALJ properly considered all the evidence in determining that plaintiff had a moderate (less than marked) impairment in the moving about and manipulating objects domain. See R. 17-21 (ALJ's review of records). Testimony from plaintiff's mother constituted substantial evidence supporting the ALJ's findings concerning plaintiff's specific motor skills, as set out in the decision. See R. 52-53, 59-60. In addition, while a report from a social worker when plaintiff was approximately five months old (on December 5, 2001) indicated an age equivalency of two months in motor skills (a greater than 25% delay for his adjusted age), R. 165, other reports were appreciably better. A prior evaluation on November 30, 2001 by an early intervention specialist showed that, although plaintiff's fine motor skills were in the 2 to 3 month range, "a developmental delay of 25%," he had gross motor skills in the 4.5 to 5 month range, which was "not a developmental delay of at least 25%." R. 167. Earlier occupational therapy progress notes for September 20, 2001, indicated that plaintiff continued to meet all skill levels for gross motor and fine motor development. R. 126.

Further, Dr. A.Z. Holloway found only "Some Motor and Developmental Delay" in

11

an examination on March 13, 2002. R. 118. And, during a January 31, 2003 evaluation by a social worker at Children's Rehabilitative Services, plaintiff was

> very active and is able to walk backwards, squat and resume standing. Mom also reports that he runs well. He is able to hurl a ball and climb into an adult chair or onto a couch. Jim was able to release a cube into a cup and initiate scribble marks. He built a tower of two cubes but had difficulty stacking more than 2 cubes. He also initiated circular strokes with a crayon.

R. 171. The social worker determined that plaintiff demonstrated gross motor skills in the 18-20 month age range and fine motor skills in the 15.5 to 18 month age range (his corrected age was 18 months and one week), and that his combined score showed less than a 25% developmental delay. Id.

Again, it appears from the ALJ's decision that he properly reviewed all of the evidence and evaluated plaintiff's medical condition as a whole, considering all of his impairments to the extent they were supported by the record. The ALJ did not err in concluding, based on the testimony of the mother and all of the evidence presented in the reports submitted concerning plaintiff's condition, that the claimant had a mild (less than marked) impairment in the moving about and manipulating objects domain.

Thus, absent a "marked" limitation with respect to two of the six domains of functioning, or an "extreme" limitation as to any one of these domains, 20 C.F.R. § 416.926a(b), the ALJ did not err in determining that plaintiff's impairments do not functionally equal an impairment listed under Appendix I to Subpart P of Part 404. 20 C.F.R. § 416.924(d).

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's decision should be AFFIRMED. A separate judgment will follow.

DONE, this 20th day of April, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE